# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Julius Chad Zimmerman,

        Plaintiff,

v.

Dave Bellows, in his individual and
official capacities, *et al.*,

        Defendants.

Civ. No. 12-2811 (RHK/SER)
**MEMORANDUM OPINION AND ORDER**

Nathan M. Hansen, North St. Paul, Minnesota, for Plaintiff.

Andrea G. White, Dakota County Attorney's Office, Hastings, Minnesota, for Defendants.

## INTRODUCTION

When Plaintiff Julius Chad Zimmerman failed to appear in Minnesota state court on October 19, 2011, a warrant was issued for his arrest. Three weeks later, he was arrested and transported to the Dakota County Jail. In the interim, however, he had filed for protection under Chapter 7 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. § 101 *et seq.* Alleging (among other things) that his incarceration violated the Code's automatic stay, 11 U.S.C. § 362(a), Zimmerman commenced this action against the Dakota County Sheriff, Dave Bellows, and 10 unnamed jail deputies. Defendants now move for summary judgment. For the reasons that follow, their Motion will be

granted in part, Zimmerman's federal claims will be dismissed, and the Court will decline to exercise supplemental jurisdiction over his remaining claims.

## BACKGROUND

Although the record contains some evidentiary gaps, the pertinent facts are undisputed. At some unspecified time, Zimmerman was involved in a car accident, and American Family Insurance Group ("American") obtained a Judgment against him. It then attempted to collect the Judgment, suing Zimmerman in May 2011 in the Dakota County, Minnesota District Court. The parties have not submitted a copy of the state-court docket, but it appears[1] that American obtained an Order to Show Cause requiring Zimmerman's attendance at a hearing on October 19, 2011. When he failed to appear, the state court issued a bench warrant commanding the Dakota County Sheriff or any other law-enforcement officer to arrest Zimmerman and bring him before the court to answer for his failure.

On October 27, 2011, Zimmerman filed a bankruptcy petition in the United States Bankruptcy Court for the District of Minnesota.[2] There is no indication that he or his

---

[1] The Court takes judicial notice of the docket, see Fed. R. Evid. 201(b), which is available through the Minnesota Judicial Branch's website, http://pa.courts.state.mn.us/default.aspx (last visited December 3, 2013).

[2] With some exceptions, the filing of a bankruptcy petition "operates as a stay" of (1) "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . commenced before the commencement of the [bankruptcy] case" and (2) "the enforcement, against the debtor . . ., of a judgment obtained before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1)-(2). This "automatic" stay, "the cornerstone of bankruptcy," arises by operation of law and "gives the debtor a breathing spell from his creditors" by immediately "stop[ping] all collection efforts." Farm Credit Servs. v. Roth (In re Roth), 171 B.R. 357, 364 (Bankr. D.S.D. 1994); accord, e.g., Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) ("The automatic stay is among the most basic of

attorney informed the state court or American about that filing, and hence the warrant remained outstanding. On November 10, 2011, police officers arrested Zimmerman at his home. He claims he repeatedly told the officers he "had filed for Bankruptcy and no action could be taken against [him] to collect the underlying debt that had resulted in the warrant," but his pleas were disregarded. The officers transported him to the Dakota County Jail, where booking was completed at 1:11 a.m. on Friday, November 11, 2011 – Veteran's Day. Because of the holiday, and because November 12 and 13 were weekend days, the earliest Zimmerman could be brought before the state court was November 14.

Zimmerman claims that during his incarceration, he repeatedly told jail "staff" – "everyone working at the jail [that he] could" – about the bankruptcy filing, but he was "ignored." Eventually, though, he was able to contact his attorney, who contacted American and it, in turn, asked the state court to quash the warrant. It did so, and Zimmerman was released from custody at 9:44 a.m. on November 15.

On November 2, 2012, Zimmerman commenced this action against Sheriff Bellows, five "John Doe" jail deputies, and five "Jane Roe" jail deputies, in their individual and official capacities, alleging that his incarceration violated the Code's automatic stay[3] and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. He also alleged that Defendants' conduct violated the Minnesota

---

debtor protections under bankruptcy law. [It] springs into being immediately upon the filing of a bankruptcy petition: '[b]ecause the automatic stay is exactly what the name implies – "automatic" – it operates without the necessity for judicial intervention.'") (citation omitted).

[3] Under 11 U.S.C. § 362(k)(1), "an individual injured by any willful violation of [the automatic] stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

Constitution and constituted negligence and false imprisonment. He seeks damages, attorneys' fees, and injunctive relief requiring Defendants, *inter alia*, to develop policies about holding debtors on civil warrants when they have filed for bankruptcy. With discovery complete, Defendants now move for summary judgment on all of Zimmerman's claims. The Motion has been fully briefed and is ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The moving party bears the burden of showing that the material facts in the case are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*); Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Beard v. Banks, 548 U.S. 521, 529-30 (2006); Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

### I. The § 1983 claim

#### A. A claim for violating the automatic stay cannot lie under § 1983

It is important to recognize what this case is and is not about. Zimmerman's Complaint alleged a wide variety of constitutional torts, all brought pursuant to 42 U.S.C. § 1983,[4] including that his incarceration violated the Fourth Amendment's prohibition on unreasonable seizures and the Eighth Amendment's prohibition on cruel and unusual punishment. But Zimmerman appears to have largely abandoned those claims, focusing now on Defendants' purported violation of the automatic stay. (See Mem. in Opp'n at 2 ("From the Plaintiff's perspective, this entire case turns on whether the automatic stay applies to the Defendants and if so, whether the stay was violated on the facts put forth by the Plaintiff."); id. at 8 (asserting that the "right of which [Zimmerman] was deprived [] was the right he acquired the moment he filed bankruptcy: the automatic stay pursuant to 11 U.S.C. § 362").) He attempts to bring this automatic-stay claim in two ways, directly (under 11 U.S.C. § 362(k) (Count V)) and indirectly (under 42 U.S.C. § 1983 (Count I)). But his indirect claim fails *ab initio* – to obtain relief for a violation of the automatic stay, Zimmerman must proceed directly under the Code, not through the back door of § 1983.

True, as the parties note, § 1983 sometimes may be used to vindicate federal statutory rights. See, e.g., Nelson v. Jesson, Civ. No. 13-340, 2013 WL 5888235, at *5 (D. Minn. Nov. 1, 2013) (Kyle, J.) ("[A] plaintiff may sue under § 1983 for the violation

---

[4] Section 1983 does not confer any substantive rights but merely serves as a vehicle through which federal rights may be vindicated. E.g., Henley v. Brown, 686 F.3d 634, 640 (8th Cir. 2012) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

of an individual right *bestowed by federal statute*, as well as by the Constitution.") (emphasis added) (citing Maine v. Thiboutot, 448 U.S. 1, 4 (1980)).  That said, "not all statutory violations may be remedied through section 1983."  Henley v. Brown, 686 F.3d 634, 640 (8th Cir. 2012).  When a statute contains "sufficiently comprehensive" remedial provisions, it suggests "congressional intent to preclude the remedy of suits under § 1983."  Id. (quoting Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 20 (1981)); accord, e.g., Alexander v. Sandoval, 532 U.S. 275, 290 (2001).  In other words, "section 1983 does not afford a remedy for statutory violations where 'the governing statute provides an exclusive remedy for violation of its terms.'"  Henley, 686 F.3d at 640 (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 28 (1981)).  As the undersigned noted in Nelson, to permit a plaintiff to sidestep a statute's enforcement scheme via § 1983 "would render the carefully chosen contours of the statute's own remedies senseless."  2013 WL 5888235, at *6.

This principle applies with full force here.  Several courts have recognized that 11 U.S.C. § 362(k) "provides an exclusive and comprehensive enforcement mechanism" for violations of the automatic stay that supersedes relief through § 1983.  Chitty v. Nye Cnty. Sheriff's Dept., 46 F. App'x 526, 526 (9th Cir. 2002).  Periera v. Chapman, 92 B.R. 903 (C.D. Cal. 1988), is instructive:

> [T]here can be no doubt that the statutory scheme provided by the Bankruptcy Code reflects a balance, completeness and structural integrity that suggests remedial exclusivity.  The Bankruptcy Code embodies an unusually elaborate system for resolving bankruptcy matters, complete with its own separate adjudicative framework.

> Furthermore, the inconsistency of remedy between section 362(h)[5] and section 1983 is suggestive of an intended remedial exclusivity. Although both statutes allow a prevailing party to recover actual damages, attorney's fees, and, if appropriate, punitive damages, a plaintiff has no right to a jury trial in a section 362(h) action. This Court finds this difference to be a significant indication that Congress did not intend to allow a plaintiff to base a section 1983 action on a violation of the automatic stay. If it were otherwise, a section 362(h) plaintiff's right to a jury trial would depend solely on his choice between two federal forums[.]

Id. at 908 (internal quotation marks and citations omitted) (also noting that § 362 provides for an additional level of judicial review that does not exist under § 1983). Other decisions are in accord. See, e.g., Chitty, 46 F. App'x at 526 ("There can be no 42 U.S.C. § 1983 action based on an alleged violation of [the automatic] stay."); Harris v. Johnson (In re Harris), No. 10-13866, 2011 WL 3300716, at *7 (B.A.P. 9th Cir. Apr. 7, 2011) ("As a matter of law, a 42 U.S.C. § 1983 claim cannot be based on an alleged violation of the stay under § 362(k).").[6]

The undersigned fully agrees with these cases. Accordingly, Zimmerman's § 1983 claim must be dismissed, insofar as it is predicated only on an alleged violation of the automatic stay.

---

[5] At the time Periera was decided, the private right of action for violating the automatic stay was found in Section 362(h). See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, §§ 305(1)(B), 441, 119 Stat. 23, 79, 114 (2005).

[6] See also, e.g., Kearns v. Orr, No. 93-2377, 1994 WL 173895, at *8 (D. Kan. Apr. 20, 1994); Potter v. City of Hanceville (In re Potter), 354 B.R. 301, 316 (Bankr. N.D. Ala. 2006); Lesniewski v. Kamin (In re Lesniewski), 246 B.R. 202, 212 n.19 (Bankr. E.D. Pa. 2000); Coats v. Vawter (In re Coats), 168 B.R. 159, 167 (Bankr. S.D. Tex. 1993); but see Gibbs v. Hous. Auth. of City of New Haven, 76 B.R. 257, 261 (D. Conn. 1983).

### B. To the extent not predicated on the automatic stay, the claim still fails

Even if the § 1983 claim reached beyond the automatic stay, it would still fail for other reasons.

<u>Individual liability.</u>  Zimmerman has sued ten unnamed jail officers (five John Does and five Jane Roes) in addition to Sheriff Bellows.  And while he now claims to know the identities of these previously unnamed Defendants, at no point did he move to amend his Complaint to specifically name them, and hence none has been served with process.  On this basis alone, the Doe and Roe Defendants should be dismissed.  <u>See</u> Fed. R. Civ. P. 4(m).

More fundamentally, however, Zimmerman has not proffered sufficient evidence of personal involvement by these Defendants or Sheriff Bellows, at least insofar as they have been sued in their individual capacities.  Individual liability under § 1983 "is personal, so each defendant's conduct must be independently assessed."  <u>Heartland Acad. Cmty. Church v. Waddle</u>, 595 F.3d 798, 805-06 (8th Cir. 2010); <u>accord, e.g.</u>, <u>Wilson v. Northcutt</u>, 441 F.3d 586, 591 (8th Cir. 2006).  But with respect to the Doe and Roe Defendants, Zimmerman's submissions are long on generics and short on specifics, arguing that he repeatedly told jail "staff" about his bankruptcy filing and that his pleas were "ignored by everyone working at the jail during the time I was there."  (Zimmerman Aff. ¶¶ 3, 5.)  It would simply require too great a leap to infer from these statements that Zimmerman spoke to *every* officer working at the jail during his incarceration. Furthermore, the Court notes that he has sued five John Does and five Jane Roes, but he has now submitted a list (Hansen Aff. Ex. 1) indicating that at least *sixty* officers worked

at the jail between November 11 and November 15, 2011.  Without any attempt to delineate which of these 60 officers are among the ten Doe and Roe Defendants he has sued, Zimmerman has not demonstrated individual involvement by those Defendants. See, e.g., Binion v. City of St. Paul, 788 F. Supp. 2d 935, 945-46 (D. Minn. 2011) (Schiltz, J.) (excessive-force claim failed where plaintiff could not identify which of several officers inflicted her injury).

As for Sheriff Bellows, the evidence is even more meager.  There is no suggestion that Zimmerman interacted with the Sheriff at any point during his incarceration.  Rather, he apparently seeks to foist liability onto the Sheriff because he was "running a County Jail."  (Mem. in Opp'n at 8.)  Yet, it is well-established that "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement," Reynolds v. Dormire, 636 F.3d 976, 981 (8th Cir. 2011) (citation omitted), because *respondeat superior* liability does not exist under § 1983.  E.g., Brown v. Fortner, 518 F.3d 552, 559 n.1 (8th Cir. 2008).  Furthermore, to the extent Zimmerman's claims concern policies (or the lack thereof) at the jail, the record is devoid of evidence that Sheriff Bellows had any responsibility for formulating them.  See Davison v. City of Minneapolis, 490 F.3d 648, 660-61 (8th Cir. 2007) (declining to impose liability where no evidence existed that Fire Chief, despite authority to hire and fire employees, had been given authority to make employment policy).

Official liability.  Each Defendant also has been sued in his or her official capacity.  "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official."  Robb v. Hungerbeeler, 370 F.3d 735, 739 (8th Cir.

2004) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)). In other words, the official-capacity claims really are claims against Dakota County. Robb, 370 F.3d at 739. To succeed on these "Monell" claims,[7] Zimmerman must establish a violation of his rights resulting from a County policy or custom. E.g., Ware v. Jackson Cnty., Mo., 150 F.3d 873, 880 (8th Cir. 1998). The "policy or custom" here, Zimmerman claims, is "not checking to verify the existence of" a bankruptcy filing, resulting in civil contemnors being incarcerated in violation of the automatic stay. (Mem. in Opp'n at 8-9.) This claim cannot survive for two reasons.

First, it is well-established that "[p]roof of a single incident of [unlawful] activity is not sufficient to impose liability under Monell." City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985). Zimmerman has proffered no evidence indicating that anyone besides himself ever has been detained at the Dakota County Jail despite having filed for bankruptcy.[8]

Second, Zimmerman's claim actually challenges the County's (alleged) failure to adopt a policy of verifying bankruptcy filings. But "the failure to adopt a policy is actionable under Monell only where it evidences a conscious choice by policymakers." Jenkins v. Cnty. of Hennepin, Minn., Civ. No. 06-3625, 2009 WL 3202376, at *2 (D. Minn. Sept. 30, 2009) (Kyle, J.) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 389

---

[7] Monell v. Department of Social Services of New York, 436 U.S. 658, 690-91 (1978), in which the Supreme Court held that a municipality is a "person" suable under § 1983.

[8] Zimmerman *does* proffer a list of 18 individuals "who had been incarcerated for contempt in the [] Jail over a certain period of time." (Hansen Aff. ¶ 3 & Ex. 2.) But nothing in the record indicates those contemnors *had filed for bankruptcy*.

(1989), and Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 390 (8th Cir. 2007) (*en banc*)). In other words, Zimmerman must proffer evidence indicating that the failure to adopt a policy was the product of "deliberate indifference" to the rights of arrestees. Szabla, 486 F.3d at 390 ("[O]nly where a municipality's failure to adopt adequate safeguards was the product of deliberate indifference to the constitutional rights of its inhabitants will the municipality be liable for an unconstitutional policy under § 1983."). This "is a difficult standard to meet," Spencer v. Knapehide Truck Equip. Co., 183 F.3d 902, 906 (8th Cir. 1999), requiring evidence that the need to adopt a policy was "obvious" to the County, e.g., Reynolds, 636 F.3d at 981; Moyle v. Anderson, 571 F.3d 814, 818-19 (8th Cir. 2009). In the absence of any evidence showing the County had a history of incarcerating civil contemnors who had filed for bankruptcy, or that its policymakers were "aware (or should have been aware) of a problem[] but chose not to address it," Zimmerman had not made such a showing here. Jenkins, 2009 WL 3202376, at *3.

## II. Jurisdiction is lacking over the direct claim for violating the automatic stay

As noted above, Count V alleges that Defendants violated the automatic stay, for which Zimmerman seeks relief under 11 U.S.C. § 362(k). Though no party has raised the issue, the Court determines that it lacks jurisdiction to consider this claim. See, e.g., Sac & Fox Tribe of the Miss. in Iowa, Election Bd. v. Bureau of Indian Affairs, 439 F.3d 832, 836 (8th Cir. 2006) ("Even in the absence of a challenge from any party, courts have an independent obligation to determine whether subject matter jurisdiction exists.").

The Court has been down this road before. In Carnes v. IndyMac Mortgage Services, Civ. No. 10-3005, 2010 WL 5276987 (D. Minn. Dec. 17, 2010) (Kyle, J.), the plaintiff attempted to sue the defendant in this Court for violating the automatic stay. Canvassing the case law on the issue, the undersigned concluded that such a claim could only be brought in Bankruptcy Court. Id. at *2-4. Although not all courts have adopted that view, the undersigned noted in Carnes that "the weight of authority supports" it. Id. at *3; accord, e.g., Massey v. Bank of Edmondson Cnty., 49 F. App'x 604, 606 (6th Cir. 2002) ("The Masseys also alleged that the defendants willfully violated an automatic stay in their bankruptcy proceedings. The district court properly held that it did not have jurisdiction to review this claim."); E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank, 236 F.3d 117, 121 (2d Cir. 2001) (*per curiam*) (a claim under § 362(k) "*must* be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy cases") (emphasis in original); Scott v. Wells Fargo Home Mortgage Inc., 326 F. Supp. 2d 709, 719 (E.D. Va. 2003) ("While § 362[k] . . . creates [a] private right of action for willful violation of [the] automatic stay, 11 U.S.C. [§] 362 does not create a private cause of action outside of the Bankruptcy Court for violations of automatic stay."), aff'd *sub nom.* Scott v. Wells Fargo & Co., 67 F. App'x 238 (4th Cir. 2003) (*per curiam*); Calderon v. Bank of Am. Corp. (In re Calderon), 497 B.R. 558, 565 (Bankr. E.D. Ark. 2013) ("[T]he Court concludes that Congress assigned adjudication of § 362(k)(1) actions to the bankruptcy court.").[9]

---

[9] See also, e.g., Davis v. Courington (In re Davis), 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995); Brown v. Va. Emp't Comm'n, No. 7:12-cv-00214, 2012 WL 3240095, at *2 (W.D. Va. Aug. 7,

The Court perceives no reason to revisit Carnes here. Accordingly, it concludes that it lacks jurisdiction over Zimmerman's claim under 11 U.S.C. § 362(k).

### III. The Court declines supplemental jurisdiction over the remaining claims

The Court's subject-matter jurisdiction in this action is premised on the existence of a federal claim. (See Compl. ¶ 2.) Jurisdiction over the state-law claims exists solely by virtue of the supplemental-jurisdiction statute, 28 U.S.C. § 1367, which provides jurisdiction over state-law claims forming part of the same "case or controversy" as federal claims. But the exercise of supplemental jurisdiction is discretionary, and where all federal claims have been dismissed prior to trial, the factors to be considered in deciding whether to exercise such jurisdiction – judicial economy, convenience, fairness, comity, and predominance of state issues – typically militate against doing so. E.g., Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir. 2004) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); accord, e.g., United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). That is the case here. Accordingly, the Court declines to exercise supplemental jurisdiction over Zimmerman's remaining claims.

---

2012); Halas v. Platek, 239 B.R. 784, 792 (N.D. Ill. 1999); Dashner v. Cate, 65 B.R. 492, 494 (N.D. Iowa 1986); Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline), 420 B.R. 541, 550 n.21 (Bankr. D.N.M. 2009); In re Theokary, No. 07-11008, 2008 WL 5329310, at *2 (Bankr. E.D. Pa. Dec. 19, 2008); Startec Global Commc'ns Corp. v. Videsh Sanchar Nigam Ltd. (In re Startec Global Commc'ns Corp.), 292 B.R. 246, 254 (Bankr. D. Md. 2003); but see Justice Cometh, Ltd. v. Lambert, 426 F.3d 1342, 1343 (11th Cir. 2005) (*per curiam*); Roberts v. Am. Bank & Trust Co., 835 F. Supp. 2d 183, 205-06 (E.D. La. 2011).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 12) is **GRANTED IN PART**. The Motion is **GRANTED** as to Zimmerman's § 1983 claim (Count I) only, and that claim is **DISMISSED WITH PREJUDICE**. Count V, under 11 U.S.C. § 362(k), is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. And because the Court declines to exercise supplemental jurisdiction over Zimmerman's remaining claims, Counts II, III, IV, VI, and VII also are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 4, 2013                s/Richard H. Kyle
                                        RICHARD H. KYLE
                                        United States District Judge